UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLONY LENDER, LLC,

    Appellant,

v.                                               Case No: 8:14-cv-726-T-30

DOUGLAS N. MENCHISE, as Chapter 7
Trustee for the bankruptcy estates of
Colony Beach and Tennis Club, Inc.,
Colony Beach, Inc. and Resorts
Management, Inc.

    Appellee.
_____

## ORDER

This is an appeal from a Bankruptcy Court Order finding that the Debtors' interest in rents from a recreation lease was personal property and avoided Appellant's (Colony Lender's) security interest because Colony Lender's UCC-1 financing statement had lapsed pre-petition. Colony Lender claims it had a perfected security interest in the rents by virtue of its recorded real estate mortgage. The issue before this Court is whether the lender has a perfected security interest in the rents from the lease. On June 30, 2014, the Court conducted a hearing on this issue and heard oral argument from Appellant's counsel and Appellee's counsel.

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). The facts are not in dispute and therefore this Court's review is a question of law to be decided *de novo*. *In re Optical Technologies, Inc.*, 246 F.3d 1332 (11th Cir. 2001).

**Factual Background**

The Colony Beach Resort is a resort located on the Gulf of Mexico in Longboat Key, Florida. Purchasers of units at the resort became members of a limited partnership that owned the resort property. Members are entitled to use their unit for up to thirty days with their unit being available for rent by the partnership for the remainder of the year. Colony Beach and Tennis Club Association, Inc. (the "Association") is the homeowner's association at the resort. The Association is the tenant under a recreation lease (the "Rec Lease") whereby it rents the recreational facilities on the property. The real property together with the rents from the Rec Lease were pledged as security for a loan from the Huntington National Bank. Colony Lender is a successor in interest to Huntington and is the holder of the first mortgage and security interest in the resort property.

The Debtors, Colony Beach, Inc. ("CBI") and Colony Beach and Tennis Club, Inc. ("CBTC"), hold an 80% interest in the Rec Lease and the rents derived from it. Debtors pledged this interest in a mortgage which provides in pertinent part:

> …. any such rents, issues, profits, income and accounts receivable of any business activity conducted by the Borrower on or through the use of the Mortgaged Property, as well as the proceeds of all of the foregoing …

and goes on to say that the …

> {A}ssignment, lien and power of attorney shall apply to all rents, issues, profits … accounts receivable, choses in action and the proceeds of the same hereafter accruing from present … leases and rentals of the Mortgaged Property…."
>
> \* \* \* \* \*
>
> …{W}hen and if the Borrower and the Lender shall respectively become the Debtor and Secured Party in any Uniform Commercial Code Financing

2

> Statement affecting the Mortgaged Property, this Mortgage shall be deemed a security agreement as defined in said Uniform Commercial Code…{t}he Borrower and the Lender agree that the filing of a Financing Statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing the express declaration and intention of the parties hereto, hereinabove stated, **that everything used in the production of income from the Mortgaged Property**…and/or which is described or reflected in this Mortgage **is and at all times and for all purposes and in all proceedings both legal and equitable, shall be regarded as part of the real estate encumbered by this Mortgage** irrespective of whether….(iii) any such item is referred to or reflected in any such Financing Statement so filed at any time.
> **Similarly, the mention in any such Financing Statement of….(3) the Borrower's interest as lessor in any present or future lease or rights to income growing out of the use or occupancy of the mortgaged property hereby, whether pursuant to lease or otherwise, shall never be construed as anywise altering any of the rights of the Lender as determined by this instrument or impugning the priority of the Lender's lien granted hereby or by any other recorded document…** (emphasis supplied).

Mortgage, Section 1.2, p. 13, and Section 3.2, pp. 19-21.

Huntington, the original lender, both recorded the mortgage in the county in which the real property was located and filed a UCC-1 financing statement. The UCC-1 financing statement lapsed pre-petition.

In October, 2008, the Association petitioned for relief under Chapter 11 of the United States Bankruptcy Code. At the time of filing, the Association was current on its rent obligation under the Rec Lease and no rent arrearage existed. The Association moved to reject the unexpired term of the Rec Lease pursuant to 11 U.S.C. § 365. The Bankruptcy Court granted the Association's motion to reject the Rec Lease and determined that no money was due thereunder because it found the Rec Lease was unconscionable. This decision was reversed on appeal with the District Court holding that an award of rejection damages was appropriate. It remanded the proceeding to the Bankruptcy Court to determine the amount of the rejection damages to be allowed and for the submission of a report and recommendation on this issue.

Upon further proceedings, the Bankruptcy Court issued a report and recommendation recommending a rejection damage claim in the amount of

$2,223,391.70.  The report and recommendation further states that "the parties also agree that there was no unpaid rent due on the petition date."

Before the District Court could enter a final judgment on the rejection damages, CBTC and CBI filed for Chapter 11 protection on January 11, 2013, and the automatic stay applied to the Association's bankruptcy case.  Accordingly, a final judgment on the amount of damages owed due to the rejection of the Rec Lease has not yet been entered in the Association's bankruptcy proceedings.  But the right to pursue the rejection damages is claimed by CBI and CBTC as an asset of their bankruptcy estates.

It is undisputed that the rejection damages claim of the Debtors, CBI and CBTC, is for three years' future rent, real estate taxes, and insurance, totaling $2,228,486.60 calculated pursuant to 11 U.S.C. § 502(b)(6) which states:

> (b) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds-
> (A)  the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of –
> (I)   the date of the filing of the petition; and
> (ii)  the date on which such lessor repossessed or the lessee surrendered, the leased property; plus
> (B)  any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

In the bankruptcy case, the Debtors commenced an adversary proceeding against Colony Lender seeking to avoid Colony Lender's lien on the rejection damages arguing that the rejection damages were "personal property" and that a lien thereon could only be perfected by a duly filed financing statement under Florida's Uniform Commercial Code.  The parties agreed that the UCC-1 financing statement had lapsed pre-petition. The Bankruptcy Court agreed with the Debtors and held that Colony Lender's security interest in the Rec Lease had lapsed and allowed the Debtors to avoid Colony Lender's lien on the rejection damages under 11 U.S.C. § 544.

This appeal timely followed raising the issues of: (1) where is the appropriate place to file a security interest in rents from real estate, and (2) whether Colony Lender's security interest had lapsed.

## DISCUSSION

Colony Lender claims that it has a perfected lien against the Rec Lease rejection damages by virtue of its duly recorded mortgage and security agreement. The Trustee for the Debtors argues that the Rec Lease rejection damage claim is in the nature of personal property which can only be perfected by the filing of a UCC-1 and, since the UCC-1 lapsed, Colony Lender lost its perfected lien.

The Court turns to state law to determine the existence of property rights in assets of a debtor's estate in bankruptcy. *Butner v. United States*, 440 U.S. 48 (1979). Both statutory and case law in Florida provide that rights to rents from real property are inextricably bound to the fee simple estate. Florida has recognized this in Florida Statute § 697.07, which provides that an assignment of rents of real property is "perfected and effective against third parties upon recordation . . . in the public records of the county in which the real property is located." And it is clear that the parties to the original loan transaction agreed that the rents were part and parcel of the real estate. The mortgage specifically provides "that everything used in the production of income from the mortgage property . . . shall be regarded as part of the real estate encumbered by this mortgage…." (Mortgage, Section 3.2). By recording the mortgage in the county in which the real property was located, Colony Lender properly perfected its security interest in the rents due under the Rec Lease. *In re Rolle*, 218 B.R. 636 (Bankr. S.D. Fla. 1998).

Additionally, Florida's Uniform Commercial Code exempts from its provisions rents from real property given as security. Florida Statute § 679.1091(3)(k) (2013) provides that the UCC "does not apply to … the creation or transfer of an interest in or

lien on real property, including a lease or rents thereunder." Since the UCC-1 financing statement is not the appropriate vehicle to perfect a security interest in rents from real property, the lapse of the UCC-1 in this case is inconsequential. *In re Kavolchyck*, 164 B.R. 1018 (S.D. Fla. 1994).

The Bankruptcy Court's Report and Recommendation as to the amount of damages caused by the Association's rejection of the Rec Lease is just that, a recommendation as to the amount of future rents to be collected pursuant to the Lease, and upon which Colony Lender holds a perfected security interest. Neither the rejection by the Association nor the recommendation by the Bankruptcy Court has altered Colony Lender's security interest in the income due under the Lease. Therefore, Colony Lender is entitled to be reinstated to its secured status as to the rejection damages.

It is therefore ORDERED AND ADJUDGED that:

1. The Bankruptcy Court is directed to reinstate Colony Lender to its secured status as to the rejection damages.

2. This case is remanded to the Bankruptcy Court for further proceedings consistent with this Order.

3. The Clerk is directed to close this file and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, on July 1, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Bankruptcy Judge K. Rodney May (case #8:13-bk-350-KRM and 8:13-bk-354-KRM)
Counsel/Parties of Record